25CA1580 Peo in Interest of Howard 11-26-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1580
Pueblo County District Court No. 25MH30074
Honorable Amiel Markenson, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Michael Demetrius Howard,

Respondent-Appellant.

---

ORDER AFFIRMED

Division I
Opinion by JUDGE GROVE
J. Jones and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 26, 2025

---

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1     Respondent, Michael Demetrius Howard, appeals the district court's order authorizing the staff at the Colorado Mental Health Hospital in Pueblo (the hospital) to involuntarily medicate him. We affirm.

## I.     Background

¶ 2     Howard was committed to the hospital after being found incompetent to proceed in his criminal case. He was diagnosed with psychosis, not otherwise specified, and presented with symptoms of agitation, aggression, hallucinations, and thought disorder. After arriving at the hospital, Howard became increasingly agitated, barricaded himself in his room, and had to be restrained. He also refused to take any medications, so the hospital placed him on emergency medication.

¶ 3     At the request of his treating physician, Dr. Hareesh Pillai, the People filed a petition to involuntarily medicate Howard with olanzapine (also known as Zyprexa), valproic acid (also known as Depakote), and chlorpromazine (also known as Thorazine). A few days later, the district court held an evidentiary hearing, at which Dr. Pillai and Howard testified. After hearing the evidence, the court found that the People had established all four elements for

the involuntary administration of medication set forth in *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985), and granted the petition.

## II.   Applicable Law and Standard of Review

¶ 4     A district court may order the involuntary administration of medication if the People prove by clear and convincing evidence that (1) the patient is incompetent to effectively participate in the treatment decision; (2) the treatment is necessary to prevent a significant and likely long-term deterioration in the patient's mental health condition or to prevent the likelihood of the patient causing serious harm to himself or others at the institution; (3) a less intrusive treatment alternative is not available; and (4) the patient's need for treatment is sufficiently compelling to override any bona fide and legitimate interest of the patient in refusing treatment. *Id.*

¶ 5     Application of the *Medina* test involves mixed questions of fact and law. *People v. Marquardt*, 2016 CO 4, ¶ 8. We defer to the district court's factual findings if they have record support and review its legal conclusions de novo. *Id.*

¶ 6     When a patient challenges the sufficiency of the evidence supporting an involuntary medication order, we must affirm if the evidence, viewed as a whole and in the light most favorable to the

People, is sufficient to support the order. *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13. As the fact finder, the district court determines the sufficiency, probative effect, and weight of the evidence, along with the inferences and conclusions to be drawn therefrom. *People in Interest of R.C.*, 2019 COA 99M, ¶ 7.

### III.   Analysis

¶ 7     Howard contends that the evidence was insufficient to prove the second and fourth *Medina* elements. We disagree.

### A.   The Second *Medina* Element

¶ 8     The second *Medina* element may be satisfied by showing either (1) a significant and likely long-term deterioration or (2) the likelihood of serious harm to self or others in the institution. *Medina*, 705 P.2d at 973. Because the district court found that the People failed to prove the latter, we consider only whether the evidence was sufficient to establish that Howard required involuntary treatment to prevent a significant and likely long-term deterioration of his mental health condition.

¶ 9     After considering the evidence, the district court determined that Dr. Pillai had testified "credibly and persuasively" and "adopt[ed] the opinions expressed by the doctor." Then, as relevant

3

here, the court found that the requested treatment was necessary to prevent a significant and likely long-term deterioration of Howard's mental condition, noting evidence that Howard had "significantly improved" but "not fully stabilized" after he was placed on emergency medication. The record supports the court's finding.

¶ 10 Dr. Pillai opined that, without treatment, there would be significant and likely long-term deterioration of Howard's mental condition. Dr. Pillai noted that, when Howard was first admitted to the hospital, he showed "severe aggression," which "seemed to worsen at nighttime," resulting in "outbursts and agitation." But once Howard was placed on emergency medication, "the severity of agitation" improved "significantly." Dr. Pillai added that Howard's "frequent episodes of agitation overnight" had "almost completely resolved."

¶ 11 Despite this record, Howard contends that the evidence described above was "largely irrelevant to the question of long-term deterioration." We disagree. The evidence established that Howard was experiencing significant symptoms (e.g., agitation, aggression, and hallucinations) related to his mental illness when he was admitted to the hospital, but he showed substantial improvement

4

with the administration of medication. Because Howard's symptoms had improved significantly with consistent medication, the district court could infer that stopping the medication would result in a deterioration of Howard's mental condition. *See Marquardt,* ¶ 24 ("Viewed in light of preventing deterioration, achieving and maintaining stability in a severely mentally ill patient is an achievement.").

¶ 12 Therefore, viewed in the light most favorable to the People, we conclude that the evidence was sufficient to establish the second *Medina* element. *See People in Interest of Strodtman,* 293 P.3d 123, 132-33 (Colo. App. 2011) (evidence that the patient was "functioning poorly upon admission" but "improved dramatically with administration" of medication supported the court's finding that the People had proved the second *Medina* element).

## B. The Fourth *Medina* Element

¶ 13 In assessing the fourth *Medina* element, a court must first determine "whether the patient's refusal is bona fide and legitimate." *Medina,* 705 P.2d at 974. If it is, the court must then determine "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the

5

legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Id.*

¶ 14    The district court found that Howard had legitimate and bona fide reasons for refusing medication, namely his religious and cultural background, as well as some side effects from the medication. Howard testified that taking anti-psychotic medication was inconsistent with his religious and cultural beliefs as a Lakotan. And although Dr. Pillai testified that Howard had denied having any side effects and that staff had not observed any, Howard reported that the medication made him feel "weird" and caused constipation.

¶ 15    Yet the district court determined that Howard's prognosis without treatment was so unfavorable that his preference not to take medication had to yield to the state's interest in preserving his life and health and protecting the safety of those in the institution. In so concluding, the court pointed to evidence that Howard's mental illness had led him to barricade himself in his room and display aggression — actions that caused potential harm to his own life and health as well as the safety of others in the institution.

¶ 16    The record supports this finding.  As noted above, Dr. Pillai testified about Howard's symptoms upon his arrival at the hospital, including agitation, aggression, and hallucinations, and how the symptoms subsided with medication.  Howard also admitted to barricading himself in his room because he did not want to take medication, which resulted in staff forcibly restraining him.

¶ 17    In challenging the sufficiency of the evidence as to the fourth *Medina* element, Howard recounts the evidence supporting the district court's finding that he had a bona fide and legitimate reason for refusing medication.  But Howard does not dispute the evidence relied on by the court to conclude that his prognosis without treatment was so unfavorable that his preference not to take medication had to yield to the state's interest in preserving his life and health and protecting the safety of those in the institution.  The court weighed this evidence and determined that Howard's preference had to yield to the state's interests.  We cannot reweigh the evidence to reach a different result.  *See People in Interest of Uwayezuk*, 2023 COA 69, ¶ 57 (noting that, if ample evidence supports the decision, a reviewing court cannot substitute its judgment for that of the district court).

¶ 18     Therefore, viewed in the light most favorable to the People, we conclude that there was sufficient evidence that Howard's personal preference to refuse medication had to yield to the state's legitimate interest to protect his health, as well as to protect others in the hospital. *See id.*; *see also R.K.L.*, ¶ 13 ("The testimony of the physician seeking to administer treatment may be sufficient by itself to satisfy" the *Medina* elements.).

## IV. Disposition

¶ 19     The order is affirmed.

JUDGE J. JONES and JUDGE SCHUTZ concur.